1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         San Francisco Division

11   T.J.,                                  Case No. 19-cv-06516-LB

12              Plaintiff,
                                            **ORDER GRANTING PLAINTIFF'S**
13        v.                                **MOTION FOR SUMMARY**
                                            **JUDGMENT AND DENYING**
14   ANDREW SAUL,                           **DEFENDANT'S CROSS-MOTION FOR**
     Commissioner of Social Security,       **SUMMARY JUDGMENT**
15
                Defendant.                  Re: ECF Nos. 13, 14
16

17

18                           **INTRODUCTION**

19        The plaintiff, T.J., seeks judicial review of a final decision by the Commissioner of the Social

20   Security Administration denying her claim for disability-insurance benefits ("SSDI") under Title

21   II of the Social Security Act ("SSA").[1] The plaintiff moved for summary judgment, and the

22   Commissioner opposed the motion and filed a cross-motion for summary judgment.[2] Under Civil

23   Local Rule 16-5, the matter is submitted for decision by this court without oral argument. The

24   court grants the plaintiff's motion, denies the Commissioner's motion, and remands for further

25   proceedings.

26   _____

27   [1] Compl. – ECF No. 1 at 2; Mot. – ECF No. 13. Citations refer to material in the Electronic Case File
     ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

28   [2] Mot. – ECF No. 13; Cross-Mot. – ECF No. 14.

     ORDER – No. 19-cv-06516-LB

<div style="text-align:left">

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

</div>

United States District Court
Northern District of California

## STATEMENT

### 1.  Procedural History

On January 27, 2016, the plaintiff filed an application for SSDI benefits under Title II of the SSA.[3] She alleged disability beginning in January 25, 2016, due to the following impairments: post-traumatic stress disorder ("PTSD"), anxiety disorder, depression, multilevel degenerative disease, multilevel joint-facet osteoarthritis, chronic-fatigue syndrome, and fibromyalgia.[4]

The Commissioner denied her claim initially and on reconsideration.[5] On September 5, 2018, the Administrative Law Judge ("ALJ") held a hearing and heard testimony from the plaintiff and vocational expert ("VE") Thomas Mitchell, Ph.D.[6] The ALJ issued an unfavorable decision on October 19, 2018.[7]  The Appeals Council denied the request for review on August 23, 2019. [8]

The plaintiff timely filed this action for judicial review on October 10, 2019 and filed a motion for summary judgment on March 2, 2020.[9]  The Commissioner filed a cross-motion for summary judgment on March 30, 2020.[10] All parties consented to magistrate-judge jurisdiction.[11]

### 2.  Summary of Administrative Record

#### 2.1    Medical Records

The plaintiff alleges that she was disabled as a result of the following combined impairments: PTSD; anxiety; depression; multilevel degenerative disease; multilevel joint-facet osteoarthritis; chronic-fatigue syndrome; and fibromyalgia.[12]

---

[3] AR 205–06.

[4] AR 15, 75–76.

[5] AR 85, 108.

[6] AR 32–74.

[7] AR 12–25.

[8] AR 1–5.

[9] Compl. – ECF No. 1; Mot. – ECF No. 13.

[10] Cross-Mot. – ECF No. 14.

[11] Consents – ECF Nos. 6–7.

[12] AR 75–76.

United States District Court
Northern District of California

The following records were submitted: (1) records from Katherine Khavari, Ph.D., who treated the plaintiff for post-traumatic stress disorder and depression from July 1991 to October 1991;[13] (2) records from Kaiser Permanente from January 25, 2016 to April 12, 2016;[14] (3) records from Mahaan Rehab Services from July 28, 2015 to August 3, 2015;[15] (4) records from Ann Marie Davigo, PA, and Mark Harris, M.D., from September 8, 2015 to February 16, 2016;[16] (5) records from John Geisse, M.D. dated April 26, 2016;[17] (6) records from Ana Cherry, M.D., from July 23, 2015 to May 12, 2016;[18] (7) records from Sherry Taylor, M.D., from April 7, 2016 to July 20, 2016;[19] and (8) records from Penelope McAlmond-Ross, Psy.D., the plaintiff's treating psychologist for her PTSD, depression, insomnia, and anxiety, from February 18, 2016 to August 7, 2018.[20]

Because the plaintiff challenges the ALJ's weighing of the opinion of treating psychologist Penelope McAlmond-Ross, this order recounts that opinion fully.

Since February 2016, Dr. McAlmond-Ross has been the plaintiff's treating psychologist.[21]

On February 18, 2016, the plaintiff saw Dr. McAlmond-Ross with the following chief complaints:

> Depression, anxiety, sadness, anger, phobias, marital[] problems, awakens during the night several times, awakes early morning and cannot return to sleep, isolates, cry at inappropriate times, upset by trivial things, breathing difficulty, fatigue, over-reciting to situations, loss of interest in previously pleasurable activities, life not worthwhile, unable to become enthusiastic about anything, agitation, decision making, traumatic event, childhood issues, somaticizing, compulsions, loss of control, outbursts[22]

---

[13] AR 358–79.

[14] AR 380–408.

[15] AR 409–10.

[16] AR 412–47.

[17] AR 448–53.

[18] AR 457–11.

[19] AR 545–58.

[20] AR 559–611.

[21] AR 559–861.

[22] AR 602 (internal quotations omitted).

The plaintiff reported a history of "physical, sexual and emotional injuries by her abusive father" during her childhood. Her father was briefly removed from her home and "upon return began abusing her again." She later ran away from home and lived on the streets in San Francisco until she was 17 years old. She denied current suicidal ideations but thought that "death would be welcome if it occurred."[23] She has a history of alcohol abuse.[24]

Dr. McAlmond-Ross diagnosed the plaintiff with chronic PTSD, panic disorder without agoraphobia, major depressive disorder, and primary insomnia.[25] She found that the plaintiff's depression was severe and her anxiety was extremely severe.[26] She opined that the plaintiff had "[d]eficits in adaptive functioning that result in failure to meet developmental and socio-cultural standards for personal independence and social responsibility."[27] "Without ongoing support, the adaptive deficits limit functioning in one or more activities of daily life, such as communication, social participation, and independent living, across multiple environment, such as school, work, and community." The plaintiff's symptoms were "clinically significant."[28] Dr. McAlmond-Ross ordered weekly therapy sessions and prescribed Ativan and Zoloft.[29]

On May 15, 2016, the plaintiff presented with the following symptoms to Dr. McAlmond-Ross: "depression, anxiety, sadness, anger, phobias, loss of control, childhood issues, fatigue, and outbursts."[30] The doctor also noted that the plaintiff woke up several times in the night, cried at inappropriate times, isolated herself, became upset by trivial things, felt like her life was not worthwhile, and suffered from a traumatic event.[31]

---

[23] *Id.*

[24] AR 603.

[25] *Id.*

[26] AR 604.

[27] AR 603.

[28] *Id.*

[29] AR 605.

[30] AR 559.

[31] *Id.*

United States District Court
Northern District of California

1  Dr. McAlmond-Ross again diagnosed the plaintiff with chronic PTSD and added borderline

2  personality disorder.[32] She observed that the plaintiff had a neat and casual appearance,

3  appropriate and guarded behavior, rational judgement, and good motivational level.[33]  The

4  plaintiff was also anxious, depressed, and withdrawn, with poor self-esteem but good insight.[34]

5  Dr. McAlmond-Ross consistently reported that the plaintiff struggled with emotion regulation,

6  PTSD, anger management, grief or loss, depression, and stressors.[35]

7  On August 1, 2016, Dr. McAlmond-Ross conducted an evaluation of the plaintiff for mental

8  disorders.[36] She noted the plaintiff's principal diagnoses for PTSD and borderline personality

9  disorder. The plaintiff's appearance was "normal," and her behavior was irritable.[37] Her mood was

10  anxious, depressed, and angry, and she became labile "frequently."[38] The plaintiff had a "good"

11  ability to understand, remember, and carry out simple instructions. The plaintiff's ability was

12  "fair" in the following areas: (1) ability to understand, remember, and carry out complex

13  instructions; (2) ability to maintain concentration, attention, and persistence; and (3) ability to

14  interact appropriately with the public, supervisors, and co-workers. Her ability was "poor" in the

15  following areas: (1) ability to perform activities within a schedule and maintain regular

16  attendance; (2) ability to complete a normal workday and workweek without interruptions from

17  psychologically based symptoms; and (3) ability to respond appropriately to changes in a work

18  setting. The plaintiff was capable of managing her own funds.[39]

### 2.2   Non-Medical Evidence

20  The plaintiff submitted a third-party function report from her husband in April 2016.[40]

[32] AR 563.

[33] AR 562–63.

[34] Id.

[35] AR 567, 570, 573, 576, 581, 584.

[36] AR 607–11.

[37] AR 607.

[38] AR 608.

[39] AR 610.

[40] AR 276–84.

United States District Court
Northern District of California

United States District Court
Northern District of California

The plaintiff's husband said that "due to [the plaintiff's] complete pain and stiffness and with stress and emotional levels at a very high rate it causes her to break down and cry often and have panic filter attacks regularly."[41] Every day was different for the plaintiff: some days she was able to do normal tasks, and other days, she could not get dressed. She took care of the husband, a grandchild, three cats, and two teenagers who lived with her part-time. The plaintiff's husband tried to help her out with everything, and the kids helped her out as well. The plaintiff had difficulty with personal care at times with wearing shirts, brushing her hair, shaving, and cooking.[42] She did not need reminders for her personal needs and grooming, but she did need reminders to take her medicine. The plaintiff usually made simple meals for herself, and the husband would cook for the rest of the family. She could do some laundry, load the dishwasher, and partially clean the bathrooms. She needed help unloading the dishwasher and finishing cleaning the bathrooms and kitchen.[43] The plaintiff went outside a few times a week and was able to drive herself and go out alone.[44] She was able to pay bills, count change, handle a savings account, use checkbooks and money orders, and shop online and in stores.[45] The plaintiff was no longer social and needed reminders to go out.[46] The plaintiff's anxiety and stress levels prevented her from being around certain family members, and they could not attend as many social events as before.

The plaintiff's conditions affected her ability to lift, squat, bend, stand, walk, kneel, talk, hear, climb stairs, remember, complete tasks, concentrate, use hands, and get along with others. She did not follow spoken instructions very well, but she was able to follow written instructions. The plaintiff did not handle stress very well and could not move forward if her routine was broken.[47]

---

[41] *Id.*

[42] AR 277.

[43] AR 278.

[44] AR 279.

[45] *Id.*

[46] AR 280.

[47] AR 282.

She got along with authority figures, but she was previously laid off or fired due to her problems getting along with other people.[48]

### 3.  Administrative Proceedings

#### 3.1  Disability Determination Explanation (DDE) — Initial and Reconsideration

During the administrative process, non-examining doctors generated two disability-determination explanations ("DDE"), one at the initial level and one at the reconsideration level.

In May 2016, at the initial level, the non-examining doctors found that the plaintiff had severe back-discogenic and degenerative disorders.[49] They also found that the plaintiff had non-severe affective disorders.[50] A. Hedge, M.D., analyzed the plaintiff's residual-functional capacity ("RFC") and found that she could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk for more than 6 hours, and sit for more than 6 hours.[51] The plaintiff had postural limitations and could frequently climb ramps and stairs, stoop, and crawl.[52] She could also occasionally climb ladders, ropes, and scaffolds.[53] Because the plaintiff's conditions were not severe enough to keep her from working, they concluded she was not disabled.[54]

On reconsideration, the plaintiff alleged that her "fibromyalgia symptoms have increased to multiple skin conditions which require 3 types of treatment as well as debilitating pain."[55] She also alleged that she had to increase her mental-health visits.[56] The doctors found the following severe impairments: back-discogenic and degenerative disorders; fibromyalgia; affective disorders;

---

[48] *Id.*

[49] AR 80.

[50] *Id.*

[51] AR 82.

[52] AR 83.

[53] *Id.*

[54] AR 85.

[55] AR 88.

[56] *Id.*

anxiety disorders; and a personality disorder.[57] Assessing the plaintiff's mental RFC, R. Garland, Ph.D., found moderate limitations in the following areas: (1) ability to maintain attention and concentration for extended periods; (2) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) ability to work in coordination or in proximity to others without being distracted by them; and (4) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform a consistent pace without an unreasonable number and length of rest periods.[58] Relating to social interactions, the plaintiff was moderately limited in the following areas: (1) ability to interact appropriately with the general public; (2) ability to accept instructions and respond appropriately to criticism from supervisors; and (3) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.[59] For her adaption, the plaintiff's ability to respond appropriately to changes in the workplace setting was moderately limited.[60] They determined that the plaintiff was not disabled.[61]

### 3.2    Administrative Hearing

The ALJ held a hearing on September 5, 2018. The plaintiff and the VE testified.[62]

#### 3.2.1    Plaintiff's Testimony

The ALJ questioned the plaintiff. She testified that she was not currently working.[63] Her most recent employment was from March to December 2017 as a customer-service representative at a tile company.[64] She believed that she was terminated due to conflicts with her branch manager.[65]

---

[57] AR 99–100.

[58] AR 104–05.

[59] AR 105.

[60] AR 105–06.

[61] AR 108.

[62] AR 32–74.

[63] AR 41.

[64] AR 41–42.

[65] AR 43.

1    The plaintiff described that she did not "tolerate stress very well or anxiety."[66] She was almost

2    never at work on time and could not work a couple of times a month due her anxiety.[67] When

3    interacting with customers at her workplace, the plaintiff "would break out and cry" whenever

4    there was a mistake on an order.[68]

5         In discussing her borderline personality disorder, the plaintiff said that she was "very

6    aggressive" and would "notoriously fly off the handle" at her prior workplaces.[69]

7         While describing her PTSD, the plaintiff testified that she disassociated when she was

8    overwhelmed by emotions, and she let anger or tears overcome her.[70] The plaintiff's PTSD also

9    caused her to have panic attacks.[71]

10         ### 3.2.2    Vocational Expert's Testimony

11    VE Thomas Mitchell, Ph.D., testified at the September 5, 2018 hearing.

12    The ALJ posed the following hypothetical:

13         [an] individual [who] can perform work that is considered light, there can be up to
         occasional postural activities but nothing that involves climbing ladders, ropes or
14         scaffolding, safety issues, also no work at heights or with heavy or hazardous machinery.
         There should be a restriction to only simple and routine tasks with low public contact . . .
15         nothing that requires engaging with the public on a regular basis for the primary duties of
         the job. The simple, routine tasks . . . equivalent to unskilled work.[72]
16

17    The VE concluded that the following jobs were available under the hypothetical: (1) office clerk;

18    (2) hand packager; and (3) sorter, tester, or inspector.[73] The VE testified that if such a person

19    needed unscheduled breaks and had chronic absences, resulting in missing 20% of the worktime,

20    there would be no jobs available to such a person.[74]

21    _____

22    [66] AR 49.

23    [67] AR 50.

24    [68] AR 53.

25    [69] AR 59.

    [70] AR 60–63.

26    [71] *Id.*

27    [72] AR 69–70.

    [73] AR 69–71.

28    [74] AR 71.

United States District Court
Northern District of California

### 3.3     Administrative Findings

The ALJ followed the five-step sequential evaluation process to determine whether the plaintiff was disabled and concluded that she was not.[75]

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 25, 2016.[76]

At step two, the ALJ found that the plaintiff had the following severe impairments: PTSD; anxiety disorder; depressive disorder; borderline-personality disorder; chronic-fatigue syndrome; fibromyalgia; and osteoarthritis.[77]

At step three, the ALJ found that, including the plaintiff's mental and physical impairments or the combination of impairments, her conditions did not meet or medically equal the severity of a listed impairment in the regulations.[78]

Before reaching step four, the ALJ determined the plaintiff's RFC. The ALJ concluded that the plaintiff had the RFC to "perform light work . . . except she can do occasional postural activities but never climb ladders, ropes, or scaffolds. She must avoid work at heights or around heavy or hazardous machinery as safety precautions . . . She is limited to low public contact without regular interaction for primary duties of the job."[79]

At step four, the ALJ found that the plaintiff was unable to perform any past relevant work.[80]

At step five, the ALJ determined that, based on her RFC, the following jobs were available to the plaintiff: (1) an office clerk; (2) a hand packager; and (3) an inspector.[81]

The ALJ concluded the plaintiff was "not disabled."[82]

---

[75] AR 15–25.

[76] AR 17.

[77] *Id.*

[78] AR 18–19.

[79] AR 19.

[80] AR 23.

[81] AR 24.

[82] AR 24–25.

<div style="text-align:center; font-style:italic;">United States District Court<br>Northern District of California</div>

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal citation and quotation marks omitted); 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## GOVERNING LAW

A claimant is considered disabled if (1) she suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

> **Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i).

**Step Two**. Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(a)(4)(ii).

**Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. See 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

For steps one through four, the claimant bears the burden of proof. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Human Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

## ANALYSIS

The plaintiff contends that the ALJ erred by (1) improperly weighing the medical evidence, (2) failing to base step-three findings on substantial evidence, (3) rejecting the plaintiff's testimony, (4) rejecting third-party testimony, and (5) failing to base step-five findings on substantial evidence.[83] The court grants the plaintiff's motion for summary judgment and remands for further proceedings consistent with this order.

## 1. Whether the ALJ Erred in Weighing the Treating Physician's Opinions

The plaintiff argues the ALJ erred by according little weight to the opinion of treating psychologist Dr. McAlmond-Ross. The court remands on this ground.

---

[83] Mot. – ECF No. 13 at 11–28.

United States District Court
Northern District of California

1    The ALJ is responsible for "'resolving conflicts in medical testimony and for resolving

2    ambiguities.'" *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews*, 53 F.3d

3    at 1039). In weighing and evaluating the evidence, the ALJ must consider the entire case record,

4    including each medical opinion in the record, together with the rest of the relevant evidence.

5    20 C.F.R. § 416.927(b); *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing

6    court must consider the entire record as a whole and may not affirm simply by isolating a specific

7    quantum of supporting evidence.") (internal quotation marks and citation omitted).

8    "In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that

9    guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528

10   F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).[84] Social Security regulations

11   distinguish between three types of physicians: (1) treating physicians; (2) examining physicians;

12   and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830

13   (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining

14   physician's, and an examining physician's opinion carries more weight than a reviewing [non-

15   examining] physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing

16   *Lester*, 81 F.3d at 830); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

17   An ALJ may disregard the opinion of a treating physician, whether or not controverted.

18   *Andrews*, 53 F.3d at 1041. "To reject [the] uncontradicted opinion of a treating or examining

19   doctor, an ALJ must state clear and convincing reasons that are supported by substantial

20   evidence." *Ryan*, 528 F.3d at 1198 (alteration in original) (internal quotation marks and citation

21   omitted). By contrast, if the ALJ finds that the opinion of a treating physician is contradicted, a

22   reviewing court will require only that the ALJ provide "specific and legitimate reasons supported

23   by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)

24   (internal quotation marks and citation omitted); *see Garrison*, 759 F.3d at 1012 ("If a treating or

25

26   _____

     [84] The Social Security Administration promulgated new regulations, including a new, effective March
27   27, 2017. The previous version, effective to March 26, 2017, applies here. *See* 20 C.F.R. § 404.614(a)
     "[A]n application for benefits, or a written statement, request, or notice is filed on the day it is received
28   by an SSA employee at one of our offices or by an SSA employee who is authorized to receive it at a
     place other than one of our offices."

United States District Court
Northern District of California

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.") (internal quotation marks and citation omitted). "The opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

An ALJ errs when he "rejects a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for [his] conclusion." *Garrison*, 759 F.3d at 1012–13. "[F]actors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided[,] the consistency of the medical opinion with the record as a whole[, and] the specialty of the physician providing the opinion…" *Orn*, 495 F.3d at 631. (citing 20 C.F.R. § 404.1527(d)(3)–(6)); *see also Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (an ALJ need not agree with everything contained in the medical opinion and can consider some portions less significant than others).

The ALJ accorded Dr. McAlmond-Ross partial weight.[85] The ALJ credited the parts of the opinion "consistent with the record that the plaintiff had moderate limitations in interacting with others and concentration, persistence, and pace."[86] The ALJ found, however, there was "no evidence the [plaintiff] had more than a mild limitation in adaptation or understanding, remembering, or applying information."[87] Because Dr. McAlmond-Ross's opinion was contradicted by the findings of the state consultants, the ALJ was required to provide specific and legitimate reasons for partially rejecting Dr. McAlmond-Ross's opinion.[88] The ALJ failed to do so.

First, the ALJ erroneously rejected Dr. McAlmond-Ross's finding that the plaintiff's ability to

---

[85] AR 22.

[86] *Id.*

[87] *Id.*

[88] *Compare* AR 105–06 *with* AR 610.

United States District Court
Northern District of California

1    respond appropriately to changes in a work setting, which relates to her adaptation ability, was

2    "poor." The ALJ reasoned that the "[t]he medical evidence of record shows the claimant did not

3    usually complain about serious problems with adaptation and managing oneself."[89] The ALJ did

4    not cite to any supporting evidence in the record. *See Cox v. Colvin*, No. 15-CV-00190-JSC, 2015

5    WL 8596436, at *12 (N.D. Cal. Dec. 14, 2015) ("If an ALJ determines that a treating physician's

6    opinion is inconsistent with the medical record, he must directly identify and discuss those records

7    . . . . Here, the ALJ [erred because he] failed to identify and discuss such records"). Moreover, the

8    ALJ did not consider other factors such as the treating relationship, the nature of the treating

9    relationship, or the length or frequency of the treatment, especially given the plaintiff's long

10   history with the treating source. *See* 20 C.F.R. § 404.1527(c).

11        Second, the ALJ's rejection of Dr. McAlmond-Ross's opinion based on the plaintiff's general

12   "appropriate" attire and grooming is similarly insufficient.[90] The ALJ did not explain why the

13   plaintiff's grooming habits contradicted her limited ability to adapt or understand, remember, or

14   apply information. *Cf. Samer v. Comm'n of Soc. Sec.*, 357 F. Supp. 3d 1005, 1007 (N.D. Cal.

15   2019) (an ALJ's credibility finding was erroneous where he "cite[d] treatment notes that mention

16   [plaintiff's] good hygiene, eye contact, and concentration during appointments" without

17   "consider[ing] [those notes] in light of the entire diagnostic record"). Moreover, Dr. McAlmond-

18   Ross also observed that the plaintiff, though dressed appropriately, was "anxious, depressed, [and] . . .

19   angry."[91] The ALJ does not address these other parts of the record.

20        In sum, the ALJ erred by rejecting Dr. McAlmond-Ross's opinion without providing specific

21   and legitimate reasons.

22

23   **2.   Whether the ALJ Erred in Failing to Base Step-Three Findings on Substantial Evidence**

24        The plaintiff argues that the ALJ erred at step three by finding that she did not have an

25

26   _____

27   [89] AR 22.

     [90] *Id.*

28   [91] AR 608.

impairment or combination of impairments that met a listing. The court remands for the ALJ to reconsider the step-three analysis.

At step three of the five-step framework, "[i]f a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled." *Lewis v. Apfel*, 236 F.3d 503, 512 (citing 20 C.F.R. § 404.1520(d)). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id.* (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)). "Medical equivalence will be found 'if the medical findings are at least equal in severity and duration to the listed findings.'" *Marcia*, 900 F.2d at 175–76 (quoting 20 C.F.R. § 404.1526). Accordingly, at step three, "the ALJ must explain adequately his evaluation of the alternative tests and the combined effects of the impairments" to determine whether a claimant equals a Listing. *Id.* at 176.

As discussed above, the ALJ misweighed the medical opinion. This affects the step-three determination. The ALJ thus erred here too.

### 3.   Whether ALJ Erred in Rejecting the Plaintiff's Testimony

The plaintiff argues the ALJ erred by rejecting the plaintiff's testimony. The court remands on this ground.

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112 (9th Cir. 2012). "First, the ALJ must determine whether [the claimant has presented] 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Vasquez*, 572 F.3d at 591). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.* (internal quotation marks and citations omitted).

"At the same time, the ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. §

1    423(d)(5)(A).'" *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.

2    1989)). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation

3    for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities,

4    and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course

5    of treatment." *Orn*, 495 F.3d at 636 (internal quotation marks omitted). "The ALJ must identify

6    what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell*

7    *v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014); *see, e.g.*, *Morris v. Colvin*, No. 16-CV-0674-JSC,

8    2016 WL 7369300, at *12 (N.D. Cal. Dec. 20, 2016).

9         The ALJ found that the plaintiff's "medically determinable impairments could reasonably be

10   expected to cause the alleged symptoms."[92] Because there was no evidence of malingering, the

11   ALJ must provide clear and convincing evidence to reject the plaintiff's testimony regarding the

12   intensity, persistence, and limiting effects of her impairments. The ALJ did not do so.

13        First, the ALJ erred because he never identified the specific testimony he found not credible.

14   *See Burrell,* 775 F.3d at 1138; *Cox,* 2015 WL 8596436 at *20 (ALJ erred where he "failed to

15   specifically identify which of plaintiff's statements he found incredible").

16        Second, the ALJ cannot discredit the plaintiff's refusal to take medication without a good

17   reason. *Smolen*, 80 F.3d at 1284 ("Where a claimant provides evidence of a good reason for not

18   taking medication for her symptoms, her symptom testimony cannot be rejected for not doing

19   so."). The plaintiff testified that she refused psychotropic medications because they were not

20   effective over the long term, and other tools were more helpful in dealing with her symptoms.[93]

21   The ALJ did not address this. In addition, the ALJ cited to a single page out of the record to find

22   that the plaintiff "reported improvement" while she saw a therapist.[94] This record, however,

23   specifically noted that the plaintiff found it "extremely difficult to function" and sometimes had

24   "[p]anic attacks daily."[95] *Cf. Garrison*, 759 F.3d at 1017 ("[I]t is error for an ALJ to pick out a few

25   _____

26   [92] AR 20.

      [93] AR 59–60.

27   [94] AR 20.

28   [95] AR 474.

United States District Court
Northern District of California

1    isolated instances of improvement over a period of months or years and to treat them as a basis for

2    concluding a claimant is capable of working.").

3        Finally, it is unclear how the plaintiff's ability to raise her grandson, her experience with other

4    stressors, and her previous ability to lift weights discredited her testimony, particularly as the ALJ

5    never identified the portions of the testimony he found not credible.[96]

6        In sum, because the ALJ did not provide specific, clear and convincing reasons for rejecting

7    the plaintiff's testimony, and because the court remands for weighing the medical evidence, the

8    court remands on this ground too. The ALJ can reassess the plaintiff's credibility in the context of

9    the entire record.

10

11   **4.   Whether ALJ Erred in Rejecting Third-Party Testimony**

12       The ALJ erred in giving partial weight to the plaintiff's husband's statement.

13       The ALJ must consider "other source" testimony and evidence from a layperson. *Ghanim v.*

14   *Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d

15   1113, 1115 (9th Cir. 2009) ("In determining whether a claimant is disabled, an ALJ must consider

16   lay witness testimony concerning a claimant's ability to work.") (internal quotation marks and

17   citation omitted). "Descriptions by friends and family members in a position to observe a

18   claimant's symptoms and daily activities have routinely been treated as competent evidence."

19   *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). It is competent evidence and "cannot be

20   disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

21   Moreover, if an ALJ decides to disregard the testimony of a lay witness, the ALJ must provide

22   "specific" reasons that are "germane to that witness." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir.

23   2007) (internal citations omitted). The Ninth Circuit has not "required the ALJ to discuss every

24   witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114. An

25   ALJ may "point to" reasons already stated with respect to the testimony of one witness to reject

26   similar testimony by a second witness. *Id.*

27

28   _____

[96] *See* AR 20.

United States District Court
Northern District of California

United States District Court
Northern District of California

The ALJ accorded partial weight to the plaintiff's husband's statement. He said that the plaintiff's husband had "a unique, longitudinal portrait of the claimant's conditions," but he lacked the medical training to "make exacting observations as to dates, frequencies, types and degrees" of the plaintiff's symptoms.[97] This is not a specific and germane reason. That the husband was not an acceptable medical source because he lacks medical training is not a germane reason to disregard his statement. *Cf. Senorina G. v. Berryhill*, No. 5:18-cv-00534-JDE, 2019 WL 688206, at *8 (C.D. Cal. Feb. 19, 2019) (holding that the ALJ's rejection of a layperson's testimony simply because it is not "from a medical professional" is an "improper, non-germane" reason). The ALJ provided no other reasons to reject the husband's statement. He thus erred.

## 5.  Whether ALJ Erred in Failing to Base Step-Five Findings on Substantial Evidence

At step five, the ALJ concluded that, based on the plaintiff's RFC, there were jobs available for her in the national economy.[98] Because the court remands for a reweighing of the medical-opinion and other evidence, and because the RFC determinations are based on those assessments, the court remands on this ground too.

## 6.  Remand for Further Proceedings

The court has "discretion to remand a case either for additional evidence and findings or for an award of benefits." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) ("The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court.") (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).

In deciding whether to remand a social-security case for further proceedings or for an immediate award of benefits, the Ninth Circuit has promulgated the "credit-as-true" rule. *See Garrison*, 759 F.3d at 1019–23; *Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1100–02

---

[97] AR 23.

[98] AR 24.

1   (9th Cir. 2014); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *see also Connett*, 340

2   F.3d 871, 876 (9th Cir. 2003); *Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989). The credit-as-

3   true rule applies to both "medical opinion evidence" and to "claimant testimony." *Garrison*, 759

4   F.3d at 1020. Under the credit-as-true rule, a reviewing court may credit evidence that was

5   rejected during the administrative process and remand for an immediate award of benefits in the

6   following circumstances: (1) the ALJ failed to provide "legally sufficient reasons" for rejecting the

7   evidence; (2) "the record has been fully developed and further administrative proceedings would

8   serve no useful purpose;" and (3) "if the improperly discredited evidence were credited as true, the

9   ALJ would be required to find the claimant disabled on remand." *Id.* (citing *Ryan*, 528 F.3d at

10  1202; *Lingenfelter*, 504 F.3d at 1041; *Orn*, 495 F.3d at 640; *Benecke*, 379 F.3d at 595; *Smolen*, 80

11  F.3d at 1292). If these three conditions are met, the court may remand for an award of benefits

12  unless "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact,

13  disabled." *Garrison*, 759 F.3d at 1021; *see also McCartey*, 298 F.3d at 1076 (noting court's

14  "discretion").

15      Generally, "'[i]f additional proceedings can remedy defects in the original administrative

16  proceeding, a social security case should be remanded.'" *Garrison*, 759 F.3d at 1019 (quoting

17  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)) (alteration in original); *Treichler*, 775 F.3d

18  at 1099, 1106 ("a reviewing court is not required to credit claimants' allegations regarding the

19  extent of their impairments as true merely because the ALJ made a legal error in discrediting their

20  testimony;" if "the reviewing court simply cannot evaluate the challenged agency action on the

21  basis of the record before it, the proper course, except in rare circumstances, is to remand to the

22  agency for additional investigation or explanation.") (citations omitted); *see also Dominguez v.

23  Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further

24  administrative proceedings would serve no useful purpose, it may not remand with a direction to

25  provide benefits."); *McCartey*, 298 F.3d at 1076 (remand for award of benefits is discretionary);

26  *McAllister*, 888 F.2d at 603 (remand for award of benefits is discretionary); *Connett*, 340 F.3d at

27  876 (finding that a reviewing court has "some flexibility" in deciding whether to remand).

28

United States District Court
Northern District of California

1    Here, the court finds that remand is appropriate so as to "remedy defects in the original

2  administrative proceeding." *Garrison*, 759 F.3d at 1019 (cleaned up).

3

4                                **CONCLUSION**

5    For the above reasons, the court grants the plaintiff's motion, denies the Commissioner's cross-

6  motion, and remands for further proceedings consistent with this order.

7

8    **IT IS SO ORDERED.**

9    Dated: December 21, 2020

10                                    _____

11                                    LAUREL BEELER
                                      United States Magistrate Judge